[Civ. No. 3724. Fourth Dist. May 25, 1948.]

SNOOK & WELLS, INC. (a Corporation), Respondent, v. MARION B. HOLMES et al., Defendants; KING LUMBER COMPANY (a Corporation), as Trustee, etc., Appellant.

Calvin H. Conron, Jr., and Siemon, Maas & Siemon for Appellant.

Harvey, Johnston, Baker & Palmer for Respondent.

BARNARD, P. J.—This is an action to quiet title to 20 acres of land containing two oil wells. On March 18, 1937, the plaintiff leased this property to Marion B. Holmes who, with the consent of the plaintiff, immediately subleased it to U. S. Pumping Equipment Company. Two oil wells were drilled on the property during 1937.

By two instruments dated April 19, 1938 and September 20, 1938, the U. S. Pumping Equipment Company assigned all of its interests in these leases to King Lumber Company as trustee for the benefit of certain named creditors, including King Lumber Company. Under the terms of these instruments the King Lumber Company was empowered to operate the two oil wells or to sell the leasehold interest, to reduce the expenses of operation, to pay off the creditors, and to return any remaining balance to the U. S. Pumping Equipment Company.

In September, 1938, this plaintiff brought an action to cancel the lease held by U. S. Pumping Equipment Company and to have its interests in the property declared forfeited. The King Lumber Company was joined as a defendant with an allegation that it claimed to own a derrick on the property. On October 7, 1938, the King Lumber Company filed a disclaimer in that action. Subsequently, the court found that the U. S. Pumping Equipment Company had fully complied with the terms of its leases and entered a judgment in its favor.

From 1940 until June, 1946, one Zellers was in charge of operating these two oil wells under various arrangements with the King Lumber Company, as trustee. In 1943, Zellers bought the claims of all of the creditors involved in this trust, with the exception of one claim for less than $100. He paid 10 cents on the dollar for each of these claims except that of King Lumber Company, for which he paid

about 45 cents on the dollar. About the first of June, 1946, Zellers sold all of these claims to Mrs. Elmer Patterson and B. H. Patterson. At that time the King Lumber Company executed an agreement with Zellers and with the Pattersons. This agreement recited that Zellers was the present owner of all of the claims referred to in the trust agreements of April 19, 1938, and September 20, 1938, and that these claims then totaled $7,703.50. It was then provided that the King Lumber Company would continue the operation of the trust for the benefit of the Pattersons as owners of the claims, that it authorized the Pattersons to operate and control the leasehold interests in the name of the trustee with the same force and effect as though they were the trustee, and that the Pattersons would guarantee the King Lumber Company against any liability on account of such operations. The plaintiff herein was asked to give its consent to this transfer and arrangement, but refused in writing to do so.

On May 31, 1946, the plaintiff served notice of default on all interested parties, pursuant to the terms of the lease, giving notice that unless a third well was started, or in lieu thereof 10 acres of the property was quitclaimed, within 30 days, the plaintiff would terminate the lease. A third well was not started and a quitclaim deed was not furnished within the time prescribed by the notice and the lease, although such a quitclaim was tendered after this action was commenced.

This action was filed on September 10, 1946, in the ordinary form of a quiet title action. Among others, Holmes, the U. S. Pumping Equipment Company, the King Lumber Company as a corporation and as assignee and trustee, and the Independent Oil Producers Agency, to whom the oil produced was sold, were made defendants. The Pattersons were not joined as defendants.

The King Lumber Company answered asserting its right under the leases and under the trust assignments of April 19, 1938 and September 20, 1938, and denying the allegations of the complaint in conflict therewith. As a separate defense it was alleged that this defendant has been and is in possession of the property and operating the same; that it has produced and marketed large quantities of oil therefrom; that it has accounted to the plaintiff for its proportion of the proceeds, which plaintiff has accepted with full knowledge of the facts; and that it has expended large sums

in improving the premises. The prayer was that it be adjudged the owner of the lessee's estate in and to said premises insofar as the 10 acres upon which the two wells are located are concerned.

The other defendants defaulted or disclaimed with the exception of the defendants Taylor, whose interests are not material here, and the action proceeded to trial on the issues raised by the answer of the King Lumber Company. It appeared that the U. S. Pumping Equipment Company had forfeited its charter some years before because of nonpayment of taxes.

The action was first tried on March 21, 1947. On April 7, 1947, a minute order was entered ordering that plaintiff's title be quieted as against all of the defendants with the exception of the King Lumber Company as trustee; that said trustee is relieved of the forfeiture; that plaintiff's title is subject to the assignment of the sublease to this trustee insofar as the 10 acres are concerned; and that this assignment is declared valid.

The plaintiff then moved to reopen the case for the purpose of determining the amounts, conditions and all other matters pertaining to any trustee capacity on the part of King Lumber Company, for the benefit of creditors under the unrecorded assignments which had been pleaded by it, for a complete accounting of these things, and for such other and further inquiry as might be just and equitable in order to determine the interest, if any, of the King Lumber Company in these premises. On April 14, 1947, the court granted this motion and at the same time entered a judgment in favor of the plaintiff as against all defendants, with the exception of King Lumber Company as trustee.

A further hearing and trial proceeded on May 16, 1947, both oral and documentary evidence being received. At the beginning of this hearing the court stated that the motion to reopen the case had been granted to take evidence on the amount of the indebtedness, and expressed the opinion that it was proper to go into what had been done since the assignments were made, how much the debts amounted to, and possibly to consider whether the court had power to terminate the trust. Counsel for the King Lumber Company objected to the taking of an account upon the ground that it was not within the pleadings and that the necessary parties therefor were not before the court. Evidence was then admitted showing that during the operation of the trust the total gross produc-

tion of the two wells amounted to $33,181.03; that at the time this trust was created the claims of the creditors amounted to $6,329.94; that when these claims were sold by Zellers to the Pattersons they amounted to $7,703.50; and that during 1946 and 1947 proceeds of the production to the amount of $4,483.44 were held and impounded by the Independent Oil Producers Agency on account of this litigation. It does not specificially appear how this impounding was brought about but apparently the Independent Oil Producers Agency has withheld the money because it was made a defendant in this action. Expert testimony was also received that the reasonable operating profits of the property during the years the trust has been in charge would be $17,353.70. No attempt was made by the plaintiff to go further into showing what the individual accounts were or to take an accounting as between the trustee and the creditors. Some evidence was offered by the trustee showing what money has been received and for what it has been expended, from which it appears that from May, 1938 to April 22, 1947, there was an account balance of $686.47 and that during the last two years of that period $147.12 was paid to creditors. Mr. Patterson then testified as to his purchase of the rights of creditors which had previously been assigned to Zellers, and that he had operated and was continuing to operate the wells. Counsel for the trustee then offered to produce his accountant to give his summary of what is reflected in the various documents introduced in evidence. The court stated that this was unnecessary as he was not doubting the figures already in evidence and then said: ''I opened this up for the effect, if any, this accounting might have on the deal, and whether somebody had some equities or something coming, and we will have to consider that.''

In the findings it was recited that since the court was not informed, by the earlier evidence, as to the nature and extent of the interest of the King Lumber Company as trustee or as assignee for creditors, it had reopened the case for further trial and hearing in order to determine the nature of such interest as trustee for creditors or otherwise, to have accounting thereof, and for such other and further inquiry as might be just and equitable in order to determine the interest, if any, of that defendant in any capacity. Findings were then made in favor of the plaintiff. Among other things, it was found that the King Lumber Company was a party to the assignments and trust agreements dated April 19, 1938 and September 20, 1938, respectively; that the plaintiff is the owner under

its original lease of all rights in the property in question; that each and every claim of the defendants adverse to the plaintiff is without any right whatever and that none of the defendants has any right, title or interest of any nature whatsoever in said premises or any part thereof; that it is not true that the King Lumber Company has any valid claim arising out of the lease from the plaintiff to Holmes or from the sublease from Holmes to the U. S. Pumping Equipment Company, or under the assignments and declarations of trust dated April 19, 1938 and September 20, 1939; and that any claim of the King Lumber Company in its corporate capacity or as assignee for creditors, or as trustee for any creditor under said assignments, is now and at the time of the filing of the action was wholly invalid.

In paragraph 8 of the findings it was also found that on October 7, 1938, the King Lumber Company had filed in a former action its written disclaimer of any rights in the premises here involved; that since September 20, 1938, the King Lumber Company has abandoned its duties under the trust agreements and since that date has not and does not now operate, manage or control the operation of these wells but did and still continues to delegate its duties to others with the result that the total amount of creditors' claims listed to be paid under said assignments was not reduced; that King Lumber Company delegated its duties to others through oral or unrecorded written documents of which the plaintiff had no knowledge until the trial of this action; that it is not true that the plaintiff accepted anything produced on the premises with knowledge of the transactions between the King Lumber Company under these assignments and others to whom said trustee delegated its duties; and that the King Lumber Company, in any capacity, has not expended any sum of money in reconditioning or increasing the capacity of any oil well situated on these premises.

Judgment was entered quieting the plaintiff's title with respect to the 20 acres as against any claim or interests of the King Lumber Company in any capacity, and enjoining that defendant or any of its assignees or anyone claiming under it from asserting any claim whatever to the premises involved or any part thereof. A motion for new trial was made and denied and the King Lumber Company as trustee and assignee for the benefit of creditors of U. S. Pumping Equipment Company has taken this appeal.

The appellant contends that it conclusively appears that the court reversed its first decision and entered a judgment to a contrary effect solely because the appellant, as trustee, had not been able to pay off the claims of the creditors from the net proceeds of the wells. While it is conceded that the findings do not indicate that a forfeiture was declared for this reason it is contended that this must be true since no other logical reason appears. It is then argued that this is not a sufficient reason for declaring a forfeiture; that although the court expressly reopened the case for the purpose of an accounting it failed to make or take such accounting; that the creditors and real parties interested in any accounting were not parties to the action or before the court; that the disclaimer filed in the former action did not operate to divest the trustee of title; that the respondent was not a proper party to a proceeding to terminate the trust; that the trust could not be terminated merely because the creditors had not been paid; that even if the trust were terminated the trust estate would not revert to the plaintiff; and that the respondent had knowledge that assignments in trust had been made and that the appellant was operating under them.

These contentions are largely based on paragraph 8 of the findings. It may well be questioned whether the disclaimer filed by the King Lumber Company in the former action had any effect on the rights of the parties to this action. It was sued in that action in its corporate capacity, with an allegation that it claimed to own a derrick. Its disclaimer was filed for the purpose of that action, and no judgment was entered in favor of the plaintiff therein. While there is some evidence that the King Lumber Company had improperly delegated some of its powers as trustee during a portion of the time, the finding that it had at no time managed, controlled or operated the trust estate goes too far and is not fully supported by the evidence. However, these findings were not necessary to the decision and may be regarded as surplusage. There was no finding that the trust was terminated, or that because thereof the trust estate reverted to the plaintiff. While there is some evidence that the respondent had knowledge over a considerable period that these wells were being operated under some arrangement for the benefit of creditors, the further findings that until about the time of the trial it had no knowledge of the contents of the unrecorded instruments establishing the trust, and that it had not accepted its share of the proceeds from these wells with knowledge of the various

transactions between the King Lumber Company and others under the trust assignments, are fully supported by the evidence. It further appears that the King Lumber Company had not, in any capacity, expended any money in improving these wells other than as its agents and assignees may have used a portion of the proceeds from the wells for that purpose.

Regardless of the materiality of the matters found in paragraph 8 of the findings the other findings, properly supported by the evidence, are sufficient to support the court's conclusion and judgment. It appears, without conflict, that the appellant while acting as trustee had failed to drill a third well or to quitclaim 10 acres of the property as required by the terms of the lease, that notice requiring such performance within 30 days, as provided for in the lease, was served, and that neither of these things was done within the required time. While some attempt was made to excuse the delay in tendering a quitclaim deed, based on a doubt as to the description of the portion to be quitclaimed, on the absence of an officer of the trustee corporation whose signature was required, and on the fact that an attorney went on his vacation, the evidence amply sustains the court's conclusion that the notice to remedy the default had not been complied with and the court's findings that it is not true that the King Lumber Company then had a good or valid claim arising out of the leases in question and the two unrecorded assignments to it for the benefit of creditors, and that it is true that any claim of the King Lumber Company, in its corporate capacity or as assignee or as trustee for any creditor, is now and at the time of the filing of the action was invalid and groundless.

Another reason appears for the court's different decision after the second hearing, other than the mere fact that the appellant as trustee had not been able to pay the claims of the creditors. While the existence of a default and the failure to remedy the same after notice appeared at the first hearing, it rather clearly appears that the court was at that time unwilling to declare a forfeiture which would have the result of shutting off the rights of innocent creditors who were apparently involved in a rather complicated and confused situation. It further appears that the case was later reopened because the trial judge felt that he was not sufficiently informed as to the actual situation, with respect to these creditors' claims and as to the extent and nature of the interest of the King Lumber Company, as trustee and as assignee for these creditors. The case was then reopened expressly for

the purpose of hearing and determining the nature of the rights of the King Lumber Company as trustee for creditors or otherwise, "to have accounting thereon," and for such other and further inquiry as might be just and equitable in determining the claimed interests of the King Lumber Company in any capacity. The word "accounting" as there used was undoubtedly intended to refer to what the King Lumber Company had done and was doing, in connection with the determination of its claimed interests in this property, and not to a general accounting between the trustee and the beneficiaries of the trust. It was in that sense, and that sense only, that any sort of limited accounting was attempted and only for the purpose of bringing out the actual situation in order to assist in determining whether the claimed interests of the King Lumber Company, acting for the creditors, were just and equitable. The case was reopened for the purpose of bringing out the full facts in order to ascertain whether any equities actually existed which would make it unjust to others to enforce the forfeiture which would otherwise be appropriate.

On the rehearing it was brought out that while the trust had been created for the express purpose of reducing the costs of operating the wells and paying these creditors, the amount of the claims was larger after nearly nine years of operation than in the beginning. There was also evidence indicating that the claims could well have been paid under a proper handling of the wells. Moreover, it appeared that the trustee was taking little, if any, real interest in the matter and had in the meantime sold its own claim at a greatly reduced price to Zellers, who had acquired practically all of the other claims at 10 cents on the dollar. About three years later, Zellers sold these claims to other strangers, the Pattersons, who were not innocent purchasers since they were notified in advance that no consent thereto would be given and that any assignment of the creditors' claims must be taken at their own risk. The original creditors had passed out of the picture some years before, for some years Zellers had operated the property practically for the benefit of himself as sole beneficiary of the trust, and the Pattersons were then operating it purportedly under the trust but in practical effect as both trustees and sole beneficiary. The situation was one which would not only throw doubt on the past operation of the trust but which would naturally lend itself to a long continued and unnecessary continuance of the trust

through the simple device of the operators of the trust failing and neglecting to pay themselves as the sole beneficiaries of the trust. When these facts were developed upon the second hearing, and the real situation was revealed, the equities appeared in a different light and it is not surprising that the trial court changed its decision.

When all of the circumstances are considered the contentions made by the appellant are without merit. The findings of the ultimate facts, which are supported by the evidence, are sufficient to sustain the judgment and there was no failure to find on any material fact or issue which was in the nature of an ultimate fact or which was necessary either to a decision or to support the judgment as rendered. Under these views, it is unnecessary to consider further arguments of the appellant, which relate largely to conflicts in the evidence.

Some contention is made that the court erred in not determining who is entitled to the money, something over $4,000, which had accumulated from the sale of oil from these wells while they were operated by the Pattersons and which is apparently still held by the Independent Oil Producers Agency, to which the oil had been delivered. The Pattersons were not parties to this action and this issue was not raised by the pleadings but appeared incidentally in the evidence received. While the court in this equitable action could well have determined this matter, bringing in the necessary parties in order to fully dispose of the entire matter in one action, no prejudice has resulted since another action covering this issue was filed by the Pattersons after the judgment here in question was entered. The respective rights of the Pattersons and this respondent can now more readily be determined in that other action and no reversible error here appears.

The judgment is affirmed, except as to its effect, if any, on the rights or claims of others to the moneys impounded.

Marks, J., and Griffin, J., concurred.

A petition for a rehearing was denied June 14, 1948, and the opinion and judgment were modified to read as above. Appellant's petition for a hearing by the Supreme Court was denied July 22, 1948. Carter, J., and Traynor, J., voted for a hearing.